# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

| | | |
|---|---|---|
| **METRO FINANCIAL SERVICES CORP.,** | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 13-2867-STA-tmp |
| **LAURENCE E. GELLER,** | ) ) ) | |
| Defendant. | ) | |

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

Before the Court is Defendant Laurence E. Geller's Motion to Dismiss (D.E. # 15, 16) filed on January 28, 2014. Plaintiff Metro Financial Services Corp. has responded in opposition (D.E. # 22), and Defendant has filed a reply (D.E. # 27). For the reasons set forth below, Defendant's Motion to Dismiss is **DENIED**.

## BACKGROUND

Plaintiff's Complaint contains the following well-pleaded allegations, which the Court accepts as true for purposes of the Motion to Dismiss. On or about August 6, 1984, Jack A. Belz, Bico Partners,[1] and Defendant Laurence E. Geller entered into the Pyramid Associates Partnership Agreement ("the partnership agreement"). (Verified Compl. ¶ 9.) Bico Partners held a sixty percent (60%) interest in the partnership, Jack A. Belz held a twenty percent (20%) interest, and Defendant

---

[1] Bico Parnters is a general partnership comprised of Martin S. Belz, Ronald A. Belz, and Gary R. Belz. (Verified Compl. ¶ 9.)

1

held a twenty percent (20%) interest. (*Id.* ¶ 10.) On or about September 27, 1985, the First Amendment to the Partnership Agreement was made and entered into to reflect a change in the partnership structure, with Bico Partners and Jack A. Belz transferring their interests in the partnership to Belz Development. (*Id.* ¶ 11.)[2] Defendant's interest remained unaffected. (*Id.*)

For many years Pyramid Associates has been financed by a loan from Plaintiff Metro Financial Services Corp. (*Id.* ¶ 12.) In 2010, all of Pyramid Associates's assets were sold, leaving the partnership insolvent. (*Id.* ¶ 13.) Under section VI, paragraph 2 of the partnership agreement,

> [I]t is anticipated that from time to time additional capital contributions will be required to finance the operations of the Partnership, including, without limitation, regular operating expenses, payment of the Partnership's debt, both principal and interest, the purchase of additional property or improvements thereon if so authorized by the Partners. To the extent that loans and revenues from operations are not available for such purposes then the Partners shall finance same in proportion to the Partnership Percentages, by making such capital contributions as are required by the Managing Partner . . . .[E]ach Partner agrees to contribute to the Partnership an amount equal to the product of his Percentage Interest (in effect at the time of such notice) multiplied by the aggregate amount of such Additional Contribution required by the Partnership. Each Partner shall be personally liable to the Partnership for his share of the Additional Contribution.
>
> (*Id.* ¶ 14.)[3]

As of September 30, 2013, Pyramid Associates owed Plaintiff the amount of $22,407,446.01. (*Id.* ¶ 15.)

On June 28, 2013, Plaintiff delivered written notice to Belz Development, as managing partner of Pyramid Associates, demanding repayment of all amounts owed by Pyramid Associates

---

[2] Plaintiff has attached a copy of the first amendment to the partnership agreement as exhibit B to its Verified Complaint.

[3] Plaintiff has attached a copy of the partnership agreement as exhibit A to its Verified Complaint.

to Plaintiff. (*Id.* ¶ 16.) The demand required repayment of the loan in full by or before July 3, 2013. (*Id.*)[4] On July 1, 2013, Pyramid Associates responded to Plaintiff's demand by acknowledging that Pyramid Associates had disposed of all its remaining assets in 2010 and that Pyramid Associates had no assets with which to pay the obligations owed to Plaintiff. (*Id.* ¶ 17.)

Also, on July 1, 2013, Belz Development, as managing partner of Pyramid Associates, sent correspondence to Defendant requesting a written statement of Defendant's intention to honor his proportional share of the obligation the partnership owed to Plaintiff, either as a direct payment to Plaintiff, as a capital contribution to Pyramid Associates, or otherwise. (*Id.* ¶ 18.)[5] On July 11, 2013, Defendant responded to the July 1, 2013 letter, stating that he took the contents of the letter "very seriously." (*Id.* ¶ 19.)[6]

On July 19, 2013, Belz Development, Pyramid Associates, and Plaintiff entered into a release and settlement agreement memorializing Belz Development's assumption of its 80% share of Pyramid Associates's obligation to Plaintiff and Plaintiff's release of Plaintiff's claims against Belz Development for repayment of the loan. (*Id.* ¶ 20.)[7] On October 17, 2013, Plaintiff responded directly to Defendant's July 11, 2013 letter, providing Defendant with the information sought in his letter, and giving Defendant until October 31, 2013, to make arrangements for payment in full of

---

[4] Plaintiff has attached a copy of the demand letter as exhibit C to the Verified Complaint.

[5] Plaintiff has attached a copy of this letter as exhibit E to the Verified Complaint.

[6] Plaintiff has attached a copy of Defendant's letter as exhibit F to the Verified Complaint.

[7] A copy of the release and settlement is attached to the Verified Complaint as exhibit G. Upon review, the agreement actually states that Plaintiff agreed to "forebear initiating a claim against Belz Development" for the debt and that the agreement would expire in 90 days unless extended. *Id.*

3

Defendant's proportional share of the debt. (*Id.* ¶ 21.)[8] As of September 30, 2013, Defendant owes Plaintiff 20% of the total debt owed by Pyramid Associates, an amount equal to not less than $4,481,489.20 with accruing interest. (*Id.* ¶ 23.) As of October 31, 2013, Defendant had failed to make satisfactory arrangements to honor his 20% share of Pyramid Associates's obligation to Plaintiff. (*Id.* ¶ 22.) As of the filing of Plaintiff's Verified Complaint, this sum remains owed to Plaintiff by Defendant. (*Id.* ¶ 24.)

Pyramid Associates does not currently possess any assets, revenues, or other loans from operations that would service the debt due to Plaintiff, prior to Defendant becoming personally liable to Plaintiff for his share of the debt pursuant to section VI.2 of the partnership agreement. (*Id.* ¶ 25.) Pyramid Associates filed its federal and state tax returns reflecting Defendant's proportionate amount of the debt as recourse debt, thereby creating basis in the partnership interest that would have allowed Defendant, under certain circumstances, to deduct each year's share of partnership losses. (*Id.* ¶ 26.) Defendant was provided with this tax information on an annual basis to be used in filing his personal tax returns. (*Id.*) Based on these fact pleadings, Plaintiff seeks judgment in its favor in an amount of $4,481,489.20, plus additional accruing interest, late charges, prejudgment interest, post-judgment interest, the cost of collection, and reasonable attorney's fees.

In his Motion to Dismiss, Defendant argues that the Verified Complaint fails to allege the existence of an enforceable loan agreement between Plaintiff and Pyramid Associates. Under Tennessee law, an agreement to lend money is enforceable only if it contains essential terms such as the principal sum of the loan, the term of the loan, the rate of interest, and the collateral securing

---

[8] A copy of Plaintiff's letter to Defendant is attached to the Verified Complaint as exhibit H.

the loan. The Verified Complaint includes none of these details and therefore fails to state a claim to enforce such an agreement. Plaintiff has not alleged any facts to show that the partnership itself, as opposed to Belz Development or some other affiliated entity, entered into a loan agreement with Plaintiff. Defendant highlights the fact that the correspondence attached to the pleadings shows that Plaintiff, Pyramid Associates, and Belz Development all share the same address and that Plaintiff refers to the loan as an "internal loan." Defendant further argues that there is no indication about whether the loan at issue was a recourse loan or a non-recourse loan. If the loan was a non-recourse loan, then neither the partnership nor any partner could be held personally liable for the indebtedness.

In addition to the Verified Complaint's failure to allege the particulars of an enforceable loan agreement, the pleadings did not allege any facts to show that Defendant or any other partner authorized the monetary obligation, a condition required by the partnership agreement. Defendant argues that a partner cannot incur a debt and bind the partnership if the lender knew that the partner did not have authority to incur the debt. The partnership agreement requires that "any capital expenditure in excess of $25,000.00 by or on behalf of the Partnership" be approved by all partners. The Verified Complaint fails to allege that Defendant ever approved any loan from Plaintiff. The correspondence attached to the pleadings tends to show that Defendant had no knowledge of the partnership's indebtedness. The Verified Complaint also suggests that Plaintiff and Belz Development are alter egos and that the "loan" is a ruse to extract money from Defendant. Plaintiff's initial demand letter to Belz Development was sent from and addressed to the same office. Defendant contends that the agreement between Plaintiff and Belz Development also suggests self-dealing and an absence of arms-length negotiation. Belz Development never contested the indebtedness in any way and was not required to make any repayment to Plaintiff under the

5

agreement and release. Therefore, Plaintiff has failed to allege a plausible claim for indebtedness against Defendant.

In its response in opposition, Plaintiff argues that the Complaint states a claim for relief. Accepting the allegations of the pleadings as true, the Complaint shows Plaintiff and Pyramid Associates agreed that the partnership owed money to Plaintiff and that they entered into an agreement to that effect. According to Plaintiff, the pleadings need not allege the terms of a loan agreement in order to state a claim. The cases cited by Defendant to support such a requirement were all decided at summary judgment, not at the pleadings stage. The pleadings here clearly show that a meeting of the minds occurred between Plaintiff and Pyramid Associates. Plaintiff has adduced other evidence from its controller showing that it made the first loan to Pyramid Associates in 1985 and documenting the annual loan balances and interests rates from that time to the present. Plaintiff further argues that it has already provided Defendant with much of the information Defendant now argues is omitted in the pleadings. For example, Plaintiff claims that Defendant is already in receipt of information about how the interest rates were calculated for the loan. Thus, Defendant cannot seriously claim that he is not on notice of the factual grounds for Plaintiff's debt collection action.

In response to Defendant's argument questioning the validity of the loan, Plaintiff has produced a series of letters, some from as many as twenty years ago, addressed to Defendant and describing the loans from Plaintiff to Pyramid Associates. The same letters reference Defendant's obligation as a partner in Pyramid Associates to satisfy the debts. Plaintiff asserts that it was Defendant who first referred to the indebtedness as an "internal loan." Plaintiff also points out that the Complaint clearly alleges that the loans are recourse loans. Plaintiff has attached copies of the

6

partnership's tax returns for 2010 and 2011, reporting as a liability that Pyramid Associates owed Plaintiff in excess of $19 million. The Complaint alleges that Defendant has reported his proportional share of the debt on his own tax returns in order to deduct his share of the partnership's losses. As for Pyramid Associates's authority to take on the debt, the partnership agreement, which is attached as an exhibit to the Complaint, gives the managing partner authority to incur debts on behalf of the partnership. The partnership agreement explicitly states that no party dealing with the managing partner is required to determine the managing partner's authority to make a commitment or undertaking on behalf of the partnership. Based on the allegations of the Verified Complaint, Plaintiff argues that Defendant has fair notice of the nature of the claims against him. Therefore, the Motion to Dismiss should be denied.

In his reply brief, Defendant repeats his argument that the Verified Complaint does not contain any of the essential elements of a claim to enforce a loan agreement. Plaintiff relies then on a number of exhibits and additional facts, which are not found in the pleadings and so should not be considered by the Court. Defendant contends that the correspondence cited by Plaintiff was an intentionally devised "paper trail" to prove up the existence of a loan agreement. None of the letters actually show the essential elements of the claim: the amount of the loan, the term of the loan, or the interest rate. Plaintiff has also failed to allege that any loan was approved by the other partners, as required by the partnership agreement. The partnership agreement allows the managing partner to incur debts but only in the ordinary course of business. At the same time, the partnership agreement requires the approval of all partners for any long-term financing for the partnership property or when the partnership enters into an agreement with any other partner or affiliate of a partner. The Verified Complaint fails to state the purpose of any loan obtained from Plaintiff and actually shows that

Plaintiff is an affiliate of managing partner Belz Development. As for the exhibits attached to Plaintiff's response brief, Defendant argues that the materials should not be considered at the pleadings stage. Even if the Court converted the Motion to Dismiss to a motion for summary judgment, Defendant asserts that the exhibits are inadmissible hearsay.

## **STANDARD OF REVIEW**

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[9] However, legal conclusions or unwarranted factual inferences need not be accepted as true.[10] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[11] Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[12] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[13] In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as

---

[9] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[10] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[11] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[12] Fed. R. Civ. P. 8(a)(2).

[13] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting

true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[14] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15]

## ANALYSIS

The Court holds that accepting its factual allegations as true, the Verified Complaint states a plausible claim for relief. Plaintiff plausibly alleges that Defendant is a partner in Pyramid Associates, a Tennessee partnership, and that Plaintiff extended a loan to Pyramid Associates to finance its operations. According to Plaintiff, as of September 30, 2013, the total debt owed by Pyramid Associates was $22,407,466.01. Defendant holds a 20% share in the partnership and therefore is liable for 20% of the partnership's debt to Plaintiff, which is $4,481,489.20. Defendant argues that the pleadings fail to state the terms of any contract such as the original principal amount of the loan, the interest rate, or the term of the loan. However, the cases cited by Defendant all concern actions for specific performance of oral contracts to extend credit or make loans, which the alleged creditors failed to perform by refusing to make the funds available to the borrower.[16] The

---

*Twombly,* 550 U.S. at 555).

[14] *Twombly*, 550 U.S. at 555, 570.

[15] *Iqbal,* 556 U.S. at 678.

[16] *Kleto v. AmSouth Bank*, 3:04-CV-243, 2005 WL 2573379, at *3 (E.D. Tenn. Oct. 12, 2005) (granting lender summary judgment on plaintiffs' breach of oral contract claim that bank failed "to finance plaintiffs' purchase of a condominium on Hilton Head Island in South Carolina"); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat. Ass'n*, 835 S.W.2d 25, 28 (Tenn. Ct. App. 1992) (granting bank summary judgment on plaintiff's claim for breach of oral contract to lend $4,000,000.00).

Court holds that these cases are factually distinguishable from the case at bar. Plaintiff alleges that it did in fact lend funds to the partnership and that the partnership has failed to pay back the funds as promised. Therefore, Plaintiff's is not a claim for specific performance of an oral agreement to make a loan but a claim for repayment of loan funds already paid over to the partnership.

It is true that the Verified Complaint does not allege the specific terms of a contract or promissory note between Plaintiff and the partnership. However, Plaintiff alleges that Defendant is a member of the partnership and the general partner, Belz Development, has admitted the existence of the liability. "Where the existence of a partnership is sufficiently established . . . , the admissions of one partner . . . are ordinarily competent against all the other partners."[17] The long-standing rule in Tennessee is that "[e]ach member of a firm, acting within the scope of the partnership, is the agent and representative of the firm, and his acts and admissions are binding upon all the copartners," including "an admission of the indebtedness of the firm, which [the partner] was authorized to make."[18] Regardless of the specific terms of the loan agreement between Plaintiff and the partnership, the Verified Complaint's allegation that Belz Development has admitted the liability on behalf of the partnership is enough at the pleadings stage to state a claim for the recovery of the debt.

Moreover, under the Tennessee Uniform Partnership Act ("TUPA"), "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant

---

[17] 332 C.J.S. Evidence § 605.

[18] *Irby v. Brigham*, 28 Tenn. 750, 753 (1849).

or provided by law."[19] The Verified Complaint alleges that Defendant is a partner and therefore jointly and severally liable for the debts of Pyramid Associates. "The major impact of making partners not merely jointly liable for contractual obligations but also severally liable is that a creditor may choose to hold one partner liable for the entire debt without first attempting to recover the debt from the partnership."[20] The Verified Complaint further alleges that based on the admissions of Belz Development, Pyramid Associates is insolvent, making Plaintiff's claim against Defendant procedurally proper.[21] The Court would add that according to the Verified Complaint, Pyramid Associates filed federal and state tax returns reporting Defendant's proportional share of the debt as recourse debt, which is adequate at the pleadings stage to allege that the debt was recourse debt. Based on these fact pleadings, Plaintiff has plausibly alleged that Defendant is liable for his percentage share of the partnership's obligations.

As for Defendant's remaining arguments, the Court finds them unconvincing as grounds for dismissal at the pleadings stage. Defendant contends that the Verified Complaint contains no allegations to show that the partnership itself (as opposed to Belz Development in its individual capacity) entered into a loan agreement with Plaintiff or that the general partner properly obtained consent from the other partners to obtain a loan from Plaintiff. In other words, Defendant argues that

---

[19] Tenn. Code Ann. § 61–1–306; *Eagles Landing Dev., LLC v. Eagles Landing Apartments, LP*, 386 S.W.3d 246, 253 (Tenn. Ct. App. 2012).

[20] 68 C.J.S. Partnership § 225.

[21] *Id.* ("Where partners are only jointly liable for contract claims, however, the claims must be asserted first against the partnership and not against the individual partners, unless the partnership is insolvent or otherwise unable to pay its debts."); *see also* 459A Am. Jur. 2d Partnership § 403 ("A cause of action for breach of contract does not lie against an individual partner absent an allegation that the partnership is insolvent or otherwise unable to pay its obligations.").

any loan agreement with Plaintiff may have exceeded the managing partner's authority under the partnership agreement. The Court holds that these are factual issues that perhaps will be the subject of additional discovery and dispositive motions. Generally, "whether a particular transaction conducted by a partner on behalf of the firm was within the scope of his or her authority" is a question of fact."[22] Defendant has cited no authority for the proposition that such a showing is a pleading requirement. The partnership agreement in this case, which Plaintiff has attached to its Verified Complaint, gives the managing partner authority to "[i]ncur indebtedness in the ordinary course of business."[23] What is more, the agreement provides that "[n]o person dealing with the Managing Partners shall be required to determine their authority to make any commitment or undertaking on behalf of the Partnership, nor to determine any fact or circumstance bearing upon the existence of its authority."[24] At the pleadings stage, Plaintiff has alleged that the debt is owed by Pyramid Associates, not Belz Development, and that the funding was obtained for the operations of Pyramid Associates. The Court need not and cannot determine at the pleadings stage whether Belz Development as the general partner exceeded its authority under the partnership agreement. It suffices that the Verified Complaint alleges Pyramid Associates incurred the debt and used the funds for its operational expenses. Therefore, Defendant's Motion to Dismiss must be **DENIED**.

Finally, Defendant has filed a Motion to Stay Discovery (D.E. # 23), pending a ruling on the Motion to Dismiss. Because the Court is denying Defendant's Rule 12(b)(6) Motion, a stay of discovery is unnecessary. Therefore, the Motion to Stay is **DENIED** as moot.

---

[22] 1368 C.J.S. Partnership § 268.

[23] P'ship Agreement, art. X, sec. 1(c).

[24] *Id.* at art. XVI, sec. 6.

**CONCLUSION**

The Verified Complaint alleges a plausible claim for recovery of debts owed by Pyramid Associates against Defendant, a member of the partnership. Therefore, the Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: March 28, 2014.